IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY | ) |
| Plaintiff, | ) |
| v. | ) Case No. 11 C 575 |
| NORTHERN HERITAGE BUILDERS, LLC and MICHAEL McGRATH, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This insurance dispute arises out of shoddy masonry work overseen by Northern Heritage Builders, LLC ("NHB") on Michael McGrath's house in the Lincoln Park neighborhood in Chicago. Specifically, in the underlying suit, a state court jury found that NHB breached its construction contract with McGrath because masonry leaked and awarded McGrath over $600,000 in damages to repair his house. NHB's general commercial liability insurance carrier, AMCO Insurance Company ("AMCO") filed this declaratory judgment action, asserting that it had no duty to defend NHB in the underlying suit, and has no duty to indemnify NHB now, because NHB's policy does not cover damages for NHB's own faulty workmanship, and McGrath already fully recovered for damages to the contents of his house in a suit against his homeowner's insurance company. For the reasons below, the Court grants AMCO's motion for summary judgment (Doc. 21) with respect to AMCO's duty to indemnify NHB for the underlying verdict, but finds that AMCO had a duty to defend NHB in the underlying suit until McGrath and NHB stipulated, just before trial of the underlying suit, that that McGrath was only seeking damages for NHB's faulty workmanship, not for damage to the contents of his house.

I.   **MATERIAL UNDISPUTED FACTS**[1]

    A.   **Background and Parties**

McGrath owns a house at 1848 North Orchard Street in Chicago. (McGrath Facts ¶ 5.) McGrath and NHB entered into an oral contract for NHB to serve as the general contractor (or builder) overseeing the house's construction. (NHB Facts ¶ 14; McGrath Facts ¶ 7.) In that capacity, NHB did not do any of the work on the house; rather, it only managed and co-ordinated various subcontractors in exchange for a fee. (*Id.* at ¶¶ 8-10; NHB Facts ¶¶ 21, 26.) NHB hired Rapciak Construction Company ("the mason") as the masonry subcontractor at the Orchard Street house. (McGrath Facts ¶¶ 11-12; NHB Facts ¶¶ 22-24.) The mason, with NHB's knowledge, installed porous block, which allowed water to seep through the walls of the house. (McGrath Facts ¶¶ 13, 15-18.) Seven months after he moved into the house, McGrath noticed water coming in the house and warped millwork, and despite NHB's efforts to repair the damage, additional water damage was later found on all three levels of the house. (McGrath Facts ¶¶ 19-25, 27; NHB Facts ¶ 28.) Neither NHB nor the mason intended the damage to McGrath's house. (NHB Facts ¶ 36.) While the home was being repaired, McGrath and his family moved out to a nearby rental property for three years, paying $92,400 in rent and nearly $15,000 in other storage and moving expenses. (McGrath Facts ¶¶ 29-33; NHB Facts ¶¶ 29-30.)

---

[1] As part of their response to AMCO's Local Rule 56.1 statement of material undisputed facts, NHB and McGrath each provided a set of additional facts supporting denial of AMCO's motion for summary judgment, as permitted by Local Rule 56.1(b)(3)(C). (*See* Docs. 45, 49.) AMCO did not file statements responding to these additional facts, and they are deemed admitted under Local Rule 56.1. *See* L.R. 56.1(a) ("If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. All material facts set forth in the statement filed pursuant to section (b)(3)(C) *will be deemed admitted* unless controverted by the statement of the moving party.") (emphasis added); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (finding "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). The Court cites NHB's Rule 56.1(b)(3)(C) facts as "NHB Facts" and McGrath's additional facts as "McGrath Facts."

AMCO issued a primary Commercial General Liability (CGL) policy to NHB as well as an umbrella CGL policy. (NMB Facts ¶¶ 1, 4.) The policies cover amounts NHB becomes obligated to pay because of "property damage;" the insurance only applies to "property damage" if it is caused by an "occurrence" during the policy period. (NMB Facts ¶ 5.) "Property damage" is defined as:

> A. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
>
> B. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(NMB Facts ¶ 7.) "Occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (NMB Facts ¶ 7.) The primary policy also excludes coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'."[2] (NMB Facts ¶ 6.) That exclusion, however, includes what the parties call the "subcontractor exception": it "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontrator." (*Id.* at ¶¶ 6, 12.) Finally, "property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured." (NMB Facts ¶ 7.) The umbrella policy includes the same exclusions as the primary policy and defines the relevant terms in the same way. (NMB Facts ¶¶ 8-10.)

---

[2]The scope of the "products-completed operations hazard" is not at issue in this suit.

B.   **Underlying Litigation**

In 2007, McGrath sued NHB, among others, in the Circuit Court of Cook County, alleging breach of contract and negligence in connection with the construction of his Orchard Street house. (NHB 56.1 Resp. ¶¶ 5-6; McGrath 56.1 Resp. ¶¶ 6-7.) In August 18, 2008, the state court dismissed McGrath's negligence claim against NHB, reasoning that McGrath was only seeking to recover economic losses as a result of his "disappointed commercial expectations" and he could not recover tort damages under *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 91 (1982). (NHB 56.1 Resp. ¶¶ 7-9; McGrath 56.1 Resp. ¶¶ 8-10.) On February 17, 2009, McGrath filed his operative complaint in the underlying litigation, which alleged that the construction work with respect to the house's walls and roof was faulty, and, as a result, water seeped into the walls of the house. (NHB Facts ¶¶ 13, 15; NHB 56.1 Resp. ¶ 6.) That complaint asserted claims for breach of contract and breach of warranty and sought damages for the repairs needed to correct the problem as well as the expenses associated with McGrath's move to another house while the Orchard house was fixed. (NHB 56.1 Resp. ¶ 6; NHB Facts ¶ 16.) It also, notably, sought damages for McGrath's "expenses to correct, repair, restore, or replace household goods, furnishings and contents, as well as other personal property damaged . . . ." (NHB Facts ¶ 17.) The case went to trial in February 2011. (NHB 56.1 Resp. ¶¶ 11-21; McGrath 56.1 Resp. ¶¶ 11-21.) During the trial, McGrath's expert testified that the leaking was the result of improper masonry work, and McGrath's attorneys argued that NHB was responsible as the general contractor and overseer of the mason's work. (NHB Facts ¶¶ 25, 27; McGrath Facts ¶¶ 36-39.) Before closing arguments, the state court judge proposed, and the parties agreed to, the following stipulation that was read to the jury:

4

> This case does not include any claim of damage to the finished aspects of the home at 1848 Orchard including any materials or repairs related to the drywall, furring wood strips, insulation, vapor barriers or any other internal aspects of the home.

(NHB 56.1 Resp. ¶ 22; McGrath 56.1 Resp. ¶ 22.) At closing argument, McGrath's lawyer asked the jury for just under $700,000 in damages with the following breakdown:

| | |
|---|---:|
| Cost of repairing the home (Blackmore invoices): | $562,765 |
| Additional Blackmore invoice: | $26,640 |
| Rent on temporary residence: | $92,400 |
| Moving expenses: | $3,548.75 |
| Storage fees: | $10,395 |
| Utilities at temporary residence: | $850 |
| Cost to reinstall a California closet | $825 |
| **Total:** | **$697,423.75** |

(NHB Facts ¶¶ 31-32, 37; McGrath Facts ¶34; NHB 56.1 Resp. ¶ 23; McGrath 56.1 Resp. ¶ 23.) The jury returned a verdict in favor of McGrath for $601,570.50. (NHB Facts ¶ 38; NHB 56.1 Resp. ¶ 24; McGrath 56.1 Resp. ¶ 24.)

### C. McGrath's Litigation With His Homeowner's Insurance Company

In March 2007, McGrath filed suit in this District against American Family Insurance Company, his homeowner's insurance carrier. (NHB 56.1 Resp. ¶¶ 25-26; McGrath 56.1 Resp. ¶¶ 25-26; Case No. 07 C 1519.) In that suit, he sought coverage for damages from "interior water damage" and "damage to the interior" of the Orchard Street home, arguing that damage was covered by his homeowner's insurance policy. (NHB 56.1 Resp. ¶¶ 26-27; McGrath 56.1 Resp. ¶¶ 26-27; NHB Facts ¶ 39.) The district judge entered summary judgment against the carrier, finding the policy did not exclude coverage for water damages to the house's interior drywall and insulation, and the case went to trial on damages. (NHB 56.1 Resp. ¶¶ 28-29; McGrath 56.1 Resp. ¶¶ 28-29); *see also McGrath v. Am. Family Mut. Ins. Co.*, No 07 C 1519, 2008 WL 4531373, at *6-7 (N.D. Ill. Apr.

5

29, 2008)). The jury awarded McGrath $1,130,680.16 in damages "reasonably caused by the water damage," broken down by the jury as follows:

| | |
|---|---|
| Repairs to the home: | $984,072 |
| Compensation for "alternative living expenses": | $94,637.16 |
| Removal of debris | $41,420 |
| Protection of home from further damage | $10,551 |

(NHB 56.1 Resp. ¶ 29; McGrath 56.1 Resp. ¶ 29; Doc. 23-11 at 30.) The award of $984,072 for repairs was based on an invoice from a contractor in the same amount for repairs to the interior of the home, including its walls, wood flooring, millwork, electrical systems, and insulation. (NHB 56.1 Resp. ¶ 31; McGrath 56.1 Resp. ¶ 31; NHB Facts ¶ 40; Doc. 23-11 at 37.) In May 2008, the homeowner's carrier satisfied the full $1,130,680.16 judgment. (NHB 56.1 Resp. ¶ 29; McGrath 56.1 Resp. ¶ 29.)

## II. CHOICE OF LAW AND STANDARD

The parties agree that the insurance policy at issue is governed by Illinois law, and the Court will apply Illinois law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). Specifically, the Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001). Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1998).

6

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## III. DISCUSSION

### A. Duty to Defend and Indemnify

To determine whether an insurer has a duty to defend its insured, the Court compares the factual allegations of the underlying complaint to the language of the insurance policy. *American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997); *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law). In addition, a court may consider "true but unpleaded

7

facts" in conjunction with the allegations of the underlying complaint. *Monticello Ins. Co. v. Wil-Freds Constr., Inc.*, 661 N.E.2d 451, 455 (Ill. 1996) (quoting *Assoc. Indemnity Co. v. Ins. Co. of N. Am.*, 386 N.E.2d 529, 536 (Ill. 1979)). If the facts of the underlying complaint (and any true but unpleaded facts) fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Koloms*, 687 N.E.2d at 75. An insurer may not refuse to defend an action against the insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). Accordingly, courts liberally construe the underlying complaint and the insurance policy, resolving ambiguities in favor of the insured. *Id*. In construing an insurance policy, "[a] court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks and involved, and the overall purpose of the contract." *Koloms*, 687 N.E. at 75 (internal citation omitted).

In Illinois the duty to defend an insured under a policy is broader than the duty to indemnify. *See McFatridge*, 604 F.3d at 338. Thus, if the carrier has no duty to defend, it also has no duty to indemnify the insured for damages awarded in the underlying suits. *See Health Care Ind. Liab. Ins. Prog. v. Momence Meadows Nursing Ctr.*, 566 F.3d 689, 693 (7th Cir. 2009) (noting that in Illinois, because the duty to defend is broader than the duty to indemnify, "a finding of no duty to defend necessarily precludes a finding of a duty to indemnify"); *Crum*, 620 N.E.2d at 1081 (same). Even though an insurer may have a duty to defend its insured, "[a] duty to indemnify arises only if the insured has a judgment against it on any underlying claim and the insured's activity and the resulting loss or damage *actually* come within the policy's coverage." *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 643 (Ill. App. Ct. 2008).

### B. Duty to Defend

Per the policy, AMCO's duty to defend turns on whether the underlying complaint (and the resulting suit) alleges "property damage" that was caused by an "occurrence," specifically an "accident." *See Viking Constr. Mgt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 16 (Ill. App. Ct. 2005) (courts interpreting CGL policies must first determine "whether there was an 'occurrence' ... once an 'occurrence' has been established, we must determine whether there was 'property damage'" before turning to any exclusions). In other words, if underlying complaint does not concern "property damage" or was not the result of an "occurrence," then the policy does not provide coverage and AMCO has no duty to defend (or indemnify) NHB. *See id.* The policy defines "occurrence" as, in relevant part, an "accident." Though the policy does not define "accident," Illinois law does: an accident is an "unforseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *See Lyerla v. AMCO Insurance Co.*, 536 F.3d 684, 688-89 (7th Cir. 2008) (citing *Aetna Cas. & Sur. Co. v. Freyer*, 411 N.E.2d 1157, 1159 (Ill. App. Ct. 1980)).

In Illinois, "damage to a construction project resulting from construction defects is not an 'accident' or 'occurrence' because it represents the natural and ordinary consequence of faulty construction." *Lyerla*, 536 F.3d at 689 (citing *Wil-Freds* and *Viking Construction*, among other cases). As one court elegantly put it, "[a] CGL policy does not cover an accident of faulty workmanship but rather faulty workmanship that causes an accident." *Pekin Ins. Co v. Richard Marker Assocs., Inc.*, 682 N.E.2d 362, 366 (Ill. App. Ct. 1997) (quoting *Western Cas. & Surety Co. v. Brochu*, 475 N.E.2d 872, 878 (Ill. 1985).) In other words, in order for a construction defect to qualify as an "occurrence," it must damage something other than the project itself. *See Wil-Freds*,

9

661 N.E.2d at 456-57. In *Lyerla*, the Seventh Circuit applied Illinois law to the same policy language at issue here under very similar factual circumstances. In that case, the underlying plaintiff hired a general contractor to build a house according to certain specifications, and the homeowner sued for breach of contract when the contractor failed to build the house according to the specifications and in a workmanlike manner. 536 F.3d at 686-87. In the underlying suit, the homeowners sought damages for the costs of fixing the house, as well as storage fees and finance charges. *Id.* at 687. The court noted that the complaint in that case, just like the operative complaint in this case, was one for breach of contract seeking the costs of fixing defective work, Illinois precedent "strongly supports ... the conclusion that the [homeowners'] allegations of defective work do not constitute an 'accident' or 'occurrence,'" and consequently found that the insurer had no duty to defend the suit. *Id.* at 690. Similarly, in *Wil-Freds*, a municipality alleged its contractor breached their contract when a parking garage built by the contractor began to crumble and leak. 661 N.E.2d at 452, 457 (finding "we are faced merely with an occurrence of alleged negligent manufacture" and "the construction defects set forth in [the complaint] do not constitute an occurrence within the definition in the CGL policy.") *Lyerla*, *Wil-Freds*, and the cases they cite make clear that in those cases, the building owners were only suing for damages to fix the faulty construction, and *not* for damage to other property nearby.

On the other hand, if the building owner asserts damages to other property besides the construction itself, there is an "occurrence" and "property damage." *See Pekin*, 682 N.E.2d 362 at 366. For instance, in *Pekin*, the complaint alleged that a plumbing contractor failed to place pipes in the proper areas of a building and, as a result, the pipes burst, damaging carpeting, drywall and furniture. *Id.* at 363. The court distinguished *Wil-Freds*, noting that in *Wil-Freds* the plaintiff only

10

sought damages for to fix the faulty workmanship but in that case the plaintiff also wanted money for "damage to other materials not furnished by the insured." *Id.* at 366. The court concluded that "allegation . . . falls within the meaning of an accident and an occurrence." *Id.*; *see Wil-Freds*, 661 N.E.2d at 705 (hypothesizing that if the "[municipality] had sued [the contractor] for water damage suffered by cars in the parking garage . . . there can be little doubt that [the insurer] would be required to defend [the contractor] under the CGL policy"); *Lyerla*, 536 F.3d at 691 (noting the underlying complaint alleged no injury to other property); *see also Stoneridge*, 888 N.E.2d at 753 ("[w]hile defective workmanship could be covered if it damaged something other than the project itself . . . in this case the [homeowner] alleged damage only to the home. Thus there was no 'occurrence.'").

In sum, *Lyerla*, *Wil-Freds*, *Pekin* and *Stoneridge* teach that when the underlying complaint seeks damages only to correct the faulty workmanship, there is no duty to defend; however, when the complaint alleges that faulty workmanship has damaged nearby property, such allegations trigger the duty to defend. The rationale for this distinction is as follows: the CGL policies are designed to protect against damage caused to other property, but they are not "performance bonds" that allow contractors to pass off their failures to meet their contracts onto their insurers. *Stoneridge*, 888 N.E.2d at 753; *see also Pekin*, 682 N.E.2d at 822 (noting CGL policies "are intended to provide coverage for injury or damage to the person or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses"). A rule to the contrary would improperly incentivize contractors by paying them twice for shoddy work. *See Wil-Freds*, 661 N.E.2d at 459 ("if insurance proceeds could be used to pay for the repair or replacement of poorly constructed buildings, a contractor could receive

initial payment for its work and then receives subsequent payment from the insurance company to repair or replace it."). Here, the underlying complaint, on its face, sought damages for furniture and other household items that were damaged by the water intrusion. Consequently, under the policy AMCO had a duty to defend NHB in the underlying suit.

### B. Duty to Indemnify

Though the allegations of the underlying complaint triggered a duty to defend, the duty to indemnify is narrower than the duty to defend and requires the Court to determine, whether after the litigation and judgment, the loss actually falls within the bounds of the insurance. *See Stoneridge*, 888 N.E.2d at 643-44. This case is somewhat unique because even though the underlying complaint sought compensation for property damage than the cost to fix the masonry work overseen by NHB, McGrath abandoned his claim for damage to other property directly before the underlying trial by stipulating that he did not seek damages for "the finished aspects of the home at 1848 Orchard . . . or any other internal aspects of the home." The reason for the stipulation is obvious: McGrath could recover twice for the same injury and he was compensated for the damages to the inside of his house when, seven months before, his homeowners carrier satisfied the judgment in the federal suit.

Under *Lyerla* and *Wil-Freds*, once McGrath abandoned his claim for damages to other parts of the house, AMCO's duty to defend ended because at that point, McGrath only sought damages for the natural consequences of faulty workmanship and there was no "occurrence" under NHB's CGL policy. *Lyerla*, 536 F.3d at 690; *Wil-Freds*, 661 N.E.2d at 456-57. Put another way, once the parties entered that stipulation, McGrath only sought damages for the cost of repairing the bad masonry that NHB oversaw and lost use of the house, not any damage to other property. Because

there was no "occurrence" given the stipulation, AMCO has no duty to indemnify NHB for the judgment in the underlying case.

NHB points out that even though McGrath abandoned his claim for damages to the other parts of the house, he still sought damages at trial in the underlying case for the lost use of his property, namely the rent he had to pay to live in another house and the various other storage and moving expenses associated with vacating the Orchard Street house. *Lyerla* addressed, and rejected, that very argument. In *Lyerla*, the contractor asserted that the underlying complaint alleged "property damage" because the homeowner sought damages for storage fees and the definition of "property damage" in that case, like the definition in this case, included the "loss of use of tangible property that is not physically injured." *Lyerla*, 536 F.3d at 692. The court found, however, that "even if we construe the Owner's claim for storage fees as alleging a 'loss of use' of the house, the policy makes clear that a 'loss of use' shall be deemed to occur at the time of the 'occurrence' that caused it," and there was no "occurrence" supporting that loss of use. This case is no different; there is no "occurrence" under the policy here.

Finally, NHB asserts that McGrath also sought $850 in damages to fix a California closet system in the underlying suit, which demonstrates that McGrath, despite the stipulation, sought damages for the finished parts of the house. As an initial matter, the California invoice is not for damage to the closet system; rather, it is an estimate for the labor cost to re-install the system. Further, if the system was in fact damaged, the stipulation at trial would forbid any recovery for it because it is a "finished" part of the house, just like the walls and paneling. McGrath's damages for the California closet system are more appropriately considered compensation for the lost use of the closet system, not damages for its repair. In that respect, those damages are no different than the

rental, moving and storage costs incurred by McGrath when he went to the temporary house and addressed by *Lyerla* as discussed above.

### C. Subcontractor Exception

NHB asserts that because a subcontractor, not NHB, performed the faulty work the policy's "subcontractor exception" applies. Under Illinois law, "an exception to an exclusion does not create coverage or provide an additional basis for coverage, but rather, merely preserves coverage already granted in the insuring provision." *Stoneridge*, 888 N.E.2d at 757. The courts in *Lyerla* and *Stoneridge*, in analogous factual circumstances detailed as above, rejected the exact same argument based on the subcontractor exception that NHB makes here. Those courts reasoned that because there was no occurrence, and thus no coverage, there was no reason to reach the policy's exclusions and exceptions to those exclusions. *Id.* at 756-57 (noting that the subcontractor exception "cannot negate the lack of an 'occurrence' here"); *Lyerla*, 536 F.3d at 692 ("Because the underlying complaint does not contain allegations creating coverage, we need not consider an exception that restores coverage.") As in those cases, there is no "occurrence" here and the Court will not delve into any exceptions to coverage which does not exist in the first place.

## IV. CONCLUSION

For the foregoing reasons, AMCO's motion for summary judgment (Doc. 21) is granted in part. AMCO had a duty to defend NHB in the underlying suit until McGrath stipulated that he was not seeking damages to other parts of his home other than the masonry, but has no duty to indemnify NHB for the judgment in the underlying suit. Further, the Court enters summary judgment in favor of NHB and McGrath on their counterclaims with respect to AMCO's duty to defend consistent with

the above opinion, and enters summary judgment on those counterclaims in AMCO's favor with respect to the duty to indemnify.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 19, 2011